900 So.2d 325 (2005)
STATE of Louisiana, Appellee,
v.
Kenya Kimona WATSON, Appellant.
No. 39,362-KA.
Court of Appeal of Louisiana, Second Circuit.
April 20, 2005.
*327 Paula C. Marx, Lafayette, Kenota P. Johnson, for Appellant.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, Dhu Thompson, Ron C. Stamps, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
WILLIAMS, J.
The defendant, Kenya Kimona Watson, was charged by bill of information with molestation of a juvenile, a violation of LSA-R.S. 14:81.2. After a jury trial, the defendant was found guilty of the responsive verdict of indecent behavior with a juvenile, a violation of LSA-R.S. 14:81. The defendant was sentenced to serve five *328 years at hard labor, with all but six months of the sentence suspended, and placed on three years supervised probation. The defendant filed motions for post-verdict judgment of acquittal and new trial, which were denied by the trial court. The defendant now appeals. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
T.A.,[1] the mother of the minor victim, L.A., had a job hanging drywall in January 2003. The defendant was staying at T.A.'s residence, located in Shreveport, Louisiana. While T.A. was at work, the defendant babysat T.A.'s two children. T.A. had known the defendant for approximately nine or ten years and considered her to be a friend. The defendant was about twenty-six years old and pregnant at that time. The then ten-year-old male victim, L.A., has a learning disability.
On January 20, 2003, T.A. came home from work early and discovered that her bedroom door was closed, which was an unusual occurrence. When T.A. attempted to open the door, it was pushed back closed from the inside. T.A. finally was able to turn the doorknob and force the bedroom door open, knocking the defendant onto the bedroom floor. The defendant was wearing only a T-shirt, and some "X-rated stuff" was playing on the VCR. When T.A. closed the bedroom door, she saw the victim standing behind it. The victim was wearing a T-shirt and his "pants and stuff" were at his knees. T.A. immediately took the victim with her to a friend's house.
When T.A. was alone with the victim, she asked him why he was in the room watching the pornographic tape with the defendant. The victim told T.A. that the defendant called him into the room. The victim related that he told the defendant that his mama would get mad at him if she found out that he watched the tape. The victim said that the defendant told him that if he "didn't tell, [she] wouldn't tell." The victim initially told T.A. that nothing was going on. Eventually, the victim told T.A. that the defendant pulled him on top of her, and she wanted them to "hunch." T.A. immediately notified the police. The following day, T.A. brought the pornographic tape to the police.
The victim was interviewed through the Sex Crimes Unit of the Shreveport Police Department at the Children's Advocacy Center (the Gingerbread House) by personnel specially trained to conduct interviews with children involved in sex crimes. This forensic interview was videotaped to insure the veracity of the child during the interview. The victim described to the interviewer how the defendant wanted to "hunch" with him. He described how their clothes were removed and how they moved around. The victim also described the genital areas involved in the movie and the actions between him and the defendant.
The defendant was subsequently charged by bill of information with molestation of a juvenile. At a pretrial evidentiary hearing (Gingerbread Hearing), the trial court ruled that the videotaped interview of the child sex abuse victim was admissible into evidence. The defendant later filed a motion in limine seeking to prohibit the introduction of the pornographic tape and the videotaped statement of the minor victim. The trial court denied the motion.
At the defendant's jury trial, T.A. testified to the facts and circumstances of the offense. The investigating officer and *329 the forensic interviewer also testified regarding the circumstances surrounding the investigation and the interview. The videotape of the forensic interview was introduced at trial and played for the jury. Also, a portion of the pornographic videotape was played for the jury during trial.
The victim testified at trial and verified that the taped interview was truthful. He admitted on cross-examination that he initially told his mother that nothing had happened, and that the defendant had never touched his "privates." However, the victim clarified on re-direct examination that the defendant did not touch his "privates" with her hands, but that her private parts touched his private parts.
The defendant testified at trial. She denied any sexual contact with the victim, or that she was ever alone with the victim in the bedroom. The defendant testified that she was wearing a T-shirt and boxer shorts when T.A. walked in, and denied being naked from the waist down. She admitted to watching the pornographic movie, but asserted that the victim walked in the bedroom behind T.A. when the door was opened. The defendant explained that she thought T.A. conspired with the victim to fabricate this charge to get her out of T.A.'s house.
The jury subsequently found the defendant guilty of the responsive verdict of indecent behavior with a juvenile. The defendant filed motions for post-verdict judgment of acquittal and new trial, which were denied by the trial court. The defendant was sentenced to serve five years at hard labor, with all but six months of the sentence suspended, and placed on three years supervised probation.

DISCUSSION

Sufficiency of the Evidence
By her first three assignments of error, the defendant contends the evidence presented at trial was insufficient to support the jury's verdict of indecent behavior with a juvenile, and thus, the trial court erred by not granting her motions for post-verdict judgment of acquittal and new trial. The defendant argues that the elements of the crime of indecent behavior with a juvenile were not proved beyond a reasonable doubt. The defendant asserts that every reasonable hypothesis of innocence was not excluded because the state failed to prove the lewd or lascivious act or to show that the defendant was intentionally exposing herself to the victim with the intention of arousing or gratifying sexual desires. The defendant further asserts that the state failed to prove that the incident occurred. The defendant argues that, other than the contradictory testimony of T.A. and the victim, there was no independent evidence of the commission of indecent exposure by the defendant. The defendant outlines these alleged inconsistencies, and argues that the charge against her was fabricated. Thus, the defendant asserts that the evidence was insufficient to support the conviction and the conviction should be reversed.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.
LSA-C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992), writ denied, 604 So.2d 973 (La. 1992).
*330 LSA-C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article, the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir. 1993), writ denied, 93-2899 (La.2/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993).
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court must first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
However, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. LSAConst. art. V, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La. App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, XXXX-XXXX (La.6/26/98), 719 So.2d 1048.
The testimony of the victim alone is sufficient to convict a defendant. This is equally applicable to the testimony of sexual assault victims. State v. Rives, 407 So.2d 1195 (La.1981); State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808, writ denied, XXXX-XXXX (La.7/2/99), 747 So.2d 8; State v. Free, 26,267 (La. App.2d Cir.9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175; State v. Standifer, 513 So.2d 481 *331 (La.App. 2d Cir.1987). Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, XXXX-XXXX (La.3/31/00), 759 So.2d 69; State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La. 1992). See State v. Ponsell, 33,543 (La. App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La. App.2d Cir.5/8/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App.2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by LSA-C.Cr.P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. LSA-C.Cr.P. art. 814(C). State v. Mitchell, supra; State v. Johnson, 30,078 (La.App.2d Cir.12/10/97), 704 So.2d 1269, writ denied, XXXX-XXXX (La.6/26/98), 719 So.2d 1054. Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La.1988); State v. Mitchell, supra. Also see State v. Smith, 38,154 (La.App.2d Cir.4/14/04), 870 So.2d 618; State v. Hannon, 37,351 (La. App.2d Cir.8/20/03), 852 So.2d 1141.
Here, the appellate record does not reflect that the defendant made a contemporaneous objection to the responsive verdict returned by the jury. Hence, the defendant cannot complain that the evidence is insufficient to support the verdict of indecent behavior with a juvenile, provided that the evidence is sufficient to support the charged offense of molestation of a juvenile.
The essential elements of the crime of molestation of a juvenile, each of which the prosecution must prove beyond a reasonable doubt, are (1) the accused was over the age of seventeen, (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen, (3) the accused was more than two years older than the victim, (4) the accused had the specific intent to arouse or gratify either the child's sexual desires or his or her own sexual desires and (5) the accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm or by the use of influence by virtue of a position of control or supervision over the juvenile. LSA-R.S. 14:81.2; State v. LeBlanc, 506 So.2d 1197 (La.1987); State v. Elzie, 37,920 (La.App.2d Cir.1/28/04), 865 So.2d 248, writ denied, 2004-2289 (La.2/4/05), 893 So.2d 83.
At trial, the state presented the testimonial evidence of two eyewitnesses to prove that the 26-year-old defendant molested 10-year-old L.A. T.A., the victim's mother, testified that at the time of the incident, the defendant babysat L.A. and her other child. T.A. testified that she returned home early to find her bedroom door closed; after forcing entry into her bedroom, she saw that there was a pornographic tape playing and that her son and the defendant were both naked from the waist down. T.A. testified that she immediately took L.A. to a friend's house and questioned him about what happened. T.A. testified that after L.A. initially denied the occurrence of any wrongdoing, her son told *332 her that the defendant called him into the bedroom to watch the pornographic movie and to "hunch" with her.
L.A. admitted that he initially told his mother that nothing had happened because he was afraid; however, he testified that he told the truth about what happened in his videotaped statement. After asserting the truthfulness of his videotaped statement, L.A. testified that a pornographic tape was playing in his mother's bedroom, that the defendant wanted to "hunch" with him and that her private parts touched his private parts.
The defendant testified that she and T.A. were friends, but that T.A. had conspired with L.A. to charge her with molestation of a juvenile to get her out of the house. She denied being undressed from the waist down (when T.A. entered the bedroom), being alone with L.A. in the bedroom and touching L.A. on his private parts. She admitted that she watched a pornographic movie, but that the movie presented by the state was not the same movie.
The jury, presented with two different versions of the facts, determined that the testimony of L.A. and T.A. was more credible than the testimony of the defendant. As stated above, this court's authority to review questions of fact in this case does not extend to credibility determinations made by the jury. LSA-Const. art. V, § 10(B); State v. Williams, supra. Thus, great deference is accorded to the jury's decision to accept or reject the testimony of the witnesses in whole or in part. State v. Bosley, supra.
After a thorough review of this record, we conclude that the evidence, viewed in the light most favorable to the prosecution, is such that a rational trier of fact could reasonably conclude that all of the elements of molestation of a juvenile have been proved beyond a reasonable doubt. The state proved by direct evidence through the testimony from the victim, an eyewitness to the crime, and the testimony of the victim's mother, an eyewitness to the events immediately following the crime, that: (1) the defendant was over the age of seventeen; (2) the defendant committed a lewd or lascivious act upon the person or in the presence of the victim, a child under the age of seventeen; (3) the defendant was more than two years older than the victim; (4) the defendant had the specific intent to arouse or gratify either the child's sexual desires or her own sexual desires; and (5) the defendant committed the lewd or lascivious act by the use of influence by virtue of a position of control or supervision over the victim in her capacity as the victim's babysitter. LSA-R.S. 14:81.2; State v. LeBlanc, supra; State v. Elzie, supra.
Since we find the evidence is sufficient to support the charged offense of molestation of a juvenile, then the evidence also is sufficient to support the defendant's conviction of the responsive verdict of indecent behavior with a juvenile. Consequently, we also find that the trial court did not err in denying the defendant's motions for post-verdict judgment of acquittal and new trial. The assignments of error lack merit.

Admissibility of the Videotaped Testimony
By this assignment, the defendant argues that the trial court erred in ruling that the videotaped testimony of L.A. was admissible at trial. She argues that leading questions were asked of the child and the statement may have been made in response to questioning calculated to lead the child to make a particular statement. The defendant notes that the videotaped statement of the victim was introduced into evidence over the objection of the defendant. The defendant contends the *333 forensic interviewer admitted at trial that at times she felt that it was necessary to be suggestive and lead the child. The defendant argues that questions were repeated over and over again, and at times, with no response or changed responses. The defendant notes the additional concerns that the investigating officer prompted questions to the interviewer during the session through an earpiece, and that the interviewer admitted at trial that the questions posed to her by the police detective were for the purpose of helping the state's case. The defendant concludes that the statement should not have been admitted.
The state argues that the allegations urged by the defendant do not show that the trial court abused its discretion in allowing the introduction of the videotaped interview of the victim. The state notes that the defendant cross-examined the child and viewed the videotape prior to the trial. The state asserts that, to the extent the questions by the interviewer were leading, the error was harmless. The state submits that this assignment of error lacks merit.
Prior to trial, an evidentiary hearing (Gingerbread Hearing) was conducted on the state's notice of intent to use the videotaped testimony of L.A. The defendant filed a motion in limine asserting in part that the state should not be allowed to use L.A.'s videotaped testimony. The state presented the testimony of Detective Rita Caldwell of the Shreveport Police Department Sex Crimes Unit, who described the usual procedure followed in obtaining forensic videotaped and audiotaped interviews of minor victims in general, and the procedure followed in the instant case in particular. The state also presented the testimony of Wendy Westerman, the forensic interviewer who conducted the videotaped interview of the instant victim. Westerman also testified regarding the general procedure and the procedure followed in interviewing the victim, L.A. The defense argued that the procedure used did not comply with the statutory requirements set forth in LSA-R.S. 15:440.1 et seq., because the electronic recording was not properly authorized and because some of the questions were calculated to lead the child to make a particular statement. The defendant argued that there were at least two instances where the child actually changed his answers due to questioning by the interviewer. After the hearing, the trial court ruled that the videotaped interview of the child sex abuse victim met the statutory requirements and was admissible into evidence, and denied the defendant's motion.
LSA-R.S. 15:440.2(A) provides in part:[2]
(1) A court with original criminal jurisdiction or juvenile jurisdiction may, on its own motion or on motion of the district attorney, a parish welfare unit or agency, or the Department of Social Services, require that a statement of a child under fourteen who has been physically or sexually abused be recorded on videotape.
....
(3) Such a videotape shall be available for introduction as evidence in a juvenile proceeding or adult criminal proceeding.
LSA-R.S. 15:440.3 provides that the videotape authorized by this Subpart is hereby admissible in evidence as an exception to the hearsay rule. LSA-R.S. 15:440.4(A) provides:
A videotape of a child fourteen years of age or under may be offered in evidence *334 either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:

(1) That such electronic recording was voluntarily made by the victim of the physical or sexual abuse.
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the witness or victim said.
(5) That the taking of the child's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a licensed professional counselor, or an authorized representative of the Department of Social Services. (Emphasis added.)
LSA-R.S. 15:440.5 provides in part:
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:

(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
B. The admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation. (Emphasis added.)
With regard to leading questions, the court in State v. Feazell, 486 So.2d 327 (La.App. 3d Cir.1986), writ denied, 491 So.2d 20 (La.1986), considered the issue of the competency of a videotape of a child victim in which some leading questions had been asked under LSA-R.S. 15:440.4. There the court found:
Leading questions are ordinarily prohibited when propounded to one's own witness unless such witness is unwilling or hostile. LSA-R.S. 15:277.[3] However, it is well settled that an exception is usually made when questioning a young child. State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984), writ denied, 461 So.2d 312 (La.1984); State v. Kahey, 436 So.2d 475 *335 (La.1983); State v. Bolton, 408 So.2d 250 (La.1981); State v. Francis, 337 So.2d 487 (La.1976). Furthermore, notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court and in the absence of palpable abuse of that discretion resulting in prejudice to the accused, a finding of reversible error is not warranted. State v. Kelly, supra; State v. Francis, supra.

The court in Feazell found that the leading nature of the questions constituted harmless error "especially since the defense viewed the videotape prior to trial and cross-examined the child during trial." In State v. Isaac, 544 So.2d 531 (La.App. 5th Cir.1989), the fifth circuit agreed with the analysis of the third circuit in State v. Feazell, supra, and extended that reasoning to include the issue of leading questions under LSA-R.S. 15:440.5 involving admissibility of such videotapes. Therefore, because the defendant in that case cross-examined the child during the trial and viewed the videotape prior to trial, the court found that to whatever extent the questions of the interviewer were leading, the error was harmless. The court found no abuse of discretion on the part of the trial court in admitting the videotape into evidence. State v. Isaac, supra; See State v. Abbott, 29,497 (La.App.2d Cir.6/18/97), 697 So.2d 636, writ denied, XXXX-XXXX (La.1/9/98), 705 So.2d 1097.
During the videotaped interview, there were two instances where L.A. changed his responses after followup questioning. The first instance occurred when the interviewer asked whether L.A.'s underwear was on when he "hunched" with the defendant; L.A. responded that his underwear was still on. When the interviewer followed up asking whether his underwear was on or off; L.A. responded that his underwear was off. The second instance occurred when the interviewer asked how the defendant and L.A. were positioned while "hunching." Earlier, L.A. had responded that they were lying down, but later he responded that he was standing back. When the interviewer followed up for clarification between the two answers, L.A. responded that they were lying down and used the stuffed toys to demonstrate their position.
A review of the record reveals that the trial court did not err in determining that the victim's videotaped statement was admissible into evidence. The state proved at the pretrial evidentiary hearing that the requirements for admissibility set forth in LSA-R.S. 15:440.4(A) and 15:440.5 were met. Although some of the questions asked of the victim by the interviewer were suggestive and/or leading, the trial court did not abuse its discretion in allowing the introduction of the videotaped interview because the questions were for clarification purposes and were appropriate under the circumstances, considering the child's learning disability, and in the context of the interview. See State v. Feazell, supra. Finally, the defendant viewed the videotape prior to trial, and cross-examined the victim during the trial. Therefore, if any error was committed by the trial court in the admission of the videotaped interview, that error was harmless. State v. Isaac, supra. Consequently, this assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The initials of the victim and his mother are used because of victim confidentiality requirements applicable to the instant case under LSA-R.S. 46:1844(W).
[2] In Acts 2004, No. 241, the state legislature made changes to the provisions of LSA-R.S. 15:440.1 et seq., which were approved on June 15, 2004. The provisions cited in this opinion are those in effect before June 15, 2004, during the trial of the instant offense.
[3] This Revised Statute has since been repealed by § 8 of Acts 1988, No. 515 (§ 1 of which enacts the Louisiana Code of Evidence). LSA-C.E. art. 611(C) incorporates the principles of former LSA-R.S. 15:277.